UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE HERBERT WHARTON,<br><br>    Petitioner,<br><br>    v.<br><br>RON DAVIS, Warden of California State Prison at San Quentin,<br><br>    Respondent. | CASE NO. CV 92-3469 CJC<br><br>**DEATH PENALTY CASE**<br><br>ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS |

    In Claim 41(19) of his Second Amended Petition, Petitioner George Herbert Wharton argues that his counsel was constitutionally ineffective for failing to investigate and present the testimony of his half-brother, Gerald Crawford, at the penalty phase of trial. Mr. Wharton alleges that Mr. Crawford could have provided testimony that Mr. Wharton's father sexually abused Mr. Wharton, and that Mr. Wharton's step-grandfather sexually abused Mr. Wharton, two of his sisters, his grandmother, and the family's dog. From August 8 to August 30, 2006, the Court held a fourteen-day evidentiary hearing on that claim and others. The defense investigator at the time of trial, Craig Stewart, testified at the hearing. Videotaped deposition testimony from Mr. Crawford was admitted at the hearing.

//

Ultimately, the Court held that Mr. Wharton failed to show prejudice from the absence of Mr. Crawford's testimony at trial. (*See* Docket No. 827-2, Order on Evid. Hr'g Claims, Aug. 25, 2009, at 68-70.)  The Court of Appeals for the Ninth Circuit disagreed. *See Wharton v. Chappell*, 765 F.3d 953, 975-79 (9th Cir. 2014). As to whether counsel's performance was deficient, the Circuit explained:

> Stewart visited Louisiana in order to interview Petitioner's family members and acquaintances. Consistent with Petitioner's right to a thorough investigation, Stewart wrote at the beginning of his notes a list of topics to ask Petitioner's family members ['Questions Family'], and the list included an entry for inquiring about sexual, as well as physical, abuse of Petitioner. At the evidentiary hearing, Stewart confirmed that sexual abuse, if any, was one of the topics he sought to learn about while in Louisiana.
>
> On his trip, Stewart successfully interviewed many people. He often tape-recorded the interviews and, afterwards, either wrote a written report summarizing the interview or had the interview transcribed. For example, . . . Stewart wrote a nine-page, single-spaced report summarizing his interview with Robert Short [Petitioner's friend from childhood and ex-brother-in-law], which he provided to [defense counsel William] Duval.
>
> The record does not provide a clear answer to why Stewart's otherwise thorough investigation failed to uncover Crawford's highly relevant accounts of sexual abuse. Crawford was one of the family members whom Stewart sought to interview, in part because Petitioner had asked specifically that Stewart contact Crawford. Indeed, Stewart testified at the evidentiary hearing that 'Gerald [Crawford] is very important. It was his brother. George asked me over and over, 'Did you get in touch with Gerald?'
>
> Yet Stewart did not interview Crawford. The record contains neither a written report concerning Crawford nor a transcript from an interview with Crawford. And Stewart confirmed at the evidentiary hearing that he did not, in fact, interview Crawford.
>
> The reasons why Stewart did not interview Crawford and the extent of Stewart's contacts with Crawford are the subject of a clear factual

2

dispute. In the 2002 video deposition of Crawford, admitted at the evidentiary hearing, Crawford stated definitively that Stewart had never contacted him and that he would remember if he had. He further stated that, had someone contacted him about Petitioner's childhood, he would have provided the same information that he provided in the deposition. By contrast, Stewart's notes from the Louisiana trip contain a few sparse entries suggesting that Stewart did contact Crawford and that Crawford told Stewart that prison officials had used Petitioner as a 'guinea pig' in drug tests while he was incarcerated. Stewart's notes are otherwise silent about Crawford. The notes do not reveal whether Stewart asked Crawford about topics such as sexual abuse, and they do not explain why Stewart failed to interview Crawford.

At the evidentiary hearing, Stewart testified that the gap in his investigative records concerned him: 'It bothered me, both the state public defender and the state attorney general said it looks like you create memos and reports, and how come nothing was written on this. That bothered me.' A few months before the evidentiary hearing in 2006, Stewart awoke one morning with a vague memory of having phoned Crawford. According to Stewart's early morning revelation, Stewart now remembered contacting Crawford: Crawford told him that he moved away from the family home at an early age, is older than Petitioner, had nothing to share about Petitioner's childhood, did not have any present-day contact with Petitioner, and knew only about Petitioner's having been used as a 'guinea pig.' Stewart 'didn't know if [his recollection] was a dream or if it was whatever.' So he called one of the lawyers on the case and told him that 'I have some information that I woke up with. I know it sounds crazy.' The lawyer confirmed that Crawford was indeed older than Petitioner and that Crawford had moved out of the house. Stewart testified that the lawyer's confirmation 'prove[d] in my mind' that what he 'seemed to recall' was not 'fantasy or dream.' The record also contains evidence that Crawford had reasons to dismiss Stewart's inquiries: Stewart recalls that there were outstanding warrants for Crawford's arrest in California, where Petitioner's trial took place, and Crawford had health problems that could have made it difficult for him to fly to California to testify.

Without factual findings on the extent of Stewart's efforts to contact

3

>Crawford and Crawford's availability to testify or otherwise supply evidence or leads to evidence, we cannot determine whether Petitioner has established deficient performance.

*Id.* at 979-80.

The Circuit Court remanded to this Court to determine "whether Stewart contacted Crawford; and, if so, whether Stewart made sufficient efforts to find out what Crawford could say about Mr. Wharton's childhood, whether Crawford denied having useful information, and whether Crawford would have made himself available as a witness or otherwise available to provide evidence or leads to evidence." *Id.* at 981.[1] The Circuit Court directed that "[i]f the court rules that Petitioner has established deficient performance and finds that Crawford would have made himself available to testify, the court should grant the writ with respect to the sentence. Otherwise, the court should deny relief." *Id.* (footnote omitted). The Circuit Court provided that this Court "may take additional evidence at its

---

[1] The Circuit Court included Claims 37 and 41(22) with Claim 41(19) in its remand order. *See Wharton*, 765 F.3d at 981. Claim 37 alleges cumulative error at the penalty phase of trial, which would include the effects of any prejudice at issue in Claim 41(19). (*See* Docket No. 862 at 62.) Claim 41(22) alleges that counsel was constitutionally ineffective for failing to investigate and present cultural mitigating evidence (*see id.* at 68), as discussed in the Circuit Court's order. *See Wharton*, 765 F.3d at 976 n.10. As the Circuit explained:
>Petitioner raised the 'cultural mitigation' argument as a subclaim separate from the subclaim concerning Crawford. The district court held that unspecified 'witnesses' were available to testify about cultural mitigation, but neither the district court nor Petitioner has named any available witness, other than Crawford. Petitioner bears the burden of establishing what evidence a constitutionally adequate lawyer would have submitted. *Matylinsky v. Budge*, 577 F.3d 1083, 1091 (9th Cir. 2009). Accordingly, we collapse our analysis of 'cultural mitigation' and Crawford's testimony. In any event, . . . we agree with the district court that the 'cultural mitigation' evidence is slight and that Petitioner cannot demonstrate prejudice on that ground alone. Petitioner's claim of ineffective assistance of counsel at the penalty phase turns on whether Duval adequately investigated Crawford.

*Id.* The adequacy of that investigation is addressed in this order.

4

discretion." *Id.*

Meanwhile, on November 21, 2014, Mr. Wharton filed a Motion for Leave to Amend his Petition to add a claim, Claim 48, based on this Court's decision in *Jones v. Chappell*, 31 F. Supp. 3d 1050 (C.D. Cal. 2014), that California's death penalty system is unconstitutional. The Court granted his motion to amend on January 27, 2015.

**I.  Ineffective Assistance of Counsel at Penalty Phase of Trial**

   **A.  Admissibility of Evidence**

Since returning to this Court on remand, the parties have learned that Craig Stewart and Gerald Crawford are deceased. (Docket Nos. 894, 897.) Mr. Wharton seeks to admit into evidence two declarations from Mr. Stewart, dated October 8, 2000 and November 6, 2002; a declaration from Mr. Crawford, dated April 7, 1999; and videotaped excerpts from an interview of Mr. Crawford by Mr. Wharton's former counsel in 1993.[2] Respondent opposes the admission of each, but requests that if the Court admits the two Stewart declarations, it also admit a third declaration from Mr. Stewart, dated September 25, 2000. (*See* Docket No. 924, Respt.'s Post-Remand Merits Br. ("Opp.") at 18-19, Ex. A.) Mr. Wharton does not raise any objection to the September 2000 declaration Respondent
//
conditionally seeks to admit. (*Cf.* Reply at 13-14, 28-30 (discussing September 2000 declaration as part of the "expanded record").)

---

[2] *See* Docket No. 914-2, Petr.'s Consolidated Br. ("Opening Br.") at 1-7, Exs. 400 (Stewart Decl. Oct. 8, 2000), 401 (Stewart Decl. Nov. 6, 2002), 402 (Crawford Decl. Apr. 7, 1999), 403A and 403B (1993 Crawford interview transcript and video excerpt), 404A and 404B (1993 Crawford interview partial transcript and video excerpt). The Court notes that although the parties consistently discuss Exhibit 401 as the "September 6, 2002" declaration (*but see* Opening Br. at 25 (correctly identifying Exhibit 401 as Mr. Stewart's November 6, 2002 declaration), the declaration was signed November 6, 2002.

5

### 1. Declarations of Craig Stewart

In his September 2000 declaration, Mr. Stewart stated:

> Either prior to or during one of the Louisiana trips, I spoke to Mr. Crawford by telephone. Although I do not recall everything I discussed with Mr. Crawford, . . . [t]he fact that my notes contain little more than some vague references to Mr. Wharton being used as a guinea pig indicates to me that Mr. Crawford was either unable or unwilling to provide any other useful information about the 'Questions Family' topics.

(Opp. Ex. A ¶¶ 8-9.) In his October 2000 declaration, Mr. Stewart declared that he had:

> no independent recollection of ever speaking to Mr. Gerald Crawford, Mr. Wharton's older half-brother. Based on my rough note (which apparently was not memorialized in any typed report), I believe I did speak briefly with Gerald Crawford by phone, but never met with him in person. Unfortunately, my billing records do not specify when such a phone call might have taken place. I have no independent recall of what I discussed by phone with Gerald Crawford. . . . I simply do not know why it is I did not get an interview with Mr. Crawford. It would only be a guess on my part to assume that Mr. Crawford was unwilling or unable to discuss that material [the 'Questions Family' topics] during our one brief phone call.

(Opening Br. Ex. 400 ¶¶ 7-10.) In his November 2002 declaration, Mr. Stewart declared again that he had no independent recollection of speaking to Mr. Crawford, that he did not know why he did not obtain more information from Mr. Crawford, and that it was:

> also possible that I simply did not ask him at that time all of the questions which might have brought that information to light, perhaps because I planned to meet with him or at least speak with him again by telephone. I also may have assumed that Mr. Crawford had not spent much time with Mr. Wharton as a child because he was older and had a different biological father.

6

(*Id.* Ex. 401 ¶¶ 7-11.)

Mr. Stewart testified at the evidentiary hearing on August 24 and 25, 2006. He testified that three months before the evidentiary hearing, he had a recollection of speaking with Mr. Crawford. (8/25/06 Evid. Hr'g Tr. 136-37.) He recalled that he did not interview Mr. Crawford because Mr. Crawford told him, "'I'm not going to be able to help you because I didn't associate because of the age range [between Mr. Crawford and Mr. Wharton], the breakup [of Mr. Crawford's father from their mother], I lived with my father. I didn't know George growing up. I cannot help you.'" (*Id.* at 142.)

Mr. Stewart's prior statements that he had no independent recollection of speaking with Mr. Crawford impeach the credibility of his evidentiary hearing testimony that he recalled their conversation. The Court considers the declarations for that purpose.

### 2. Declaration and Interview Statements of Gerald Crawford

In his 1993 videotaped interview, Mr. Crawford stated that he did not remember Mr. Stewart contacting him, that he would have been willing to talk to an investigator for Mr. Wharton if one had contacted him, and that he would have been willing to go to California to testify. (Opening Br. Ex. 403A at 1-2.) In his 1999 declaration, Mr. Crawford stated that he was not contacted by anyone about Mr. Wharton's case at the time of trial. (Opening Br. Ex. 402 ¶ 58.) He declared that he was knowledgeable about Mr. Wharton's childhood and would have been glad to speak with anyone working on Mr. Wharton's behalf to tell them what he knew. (*Id.* ¶¶ 58-59.) He stated that he would have been more than willing to testify at Mr. Wharton's trial. (*Id.* ¶ 60.)

Respondent objects to the admission of Mr. Crawford's declaration on the basis that Mr. Wharton relies on only three paragraphs of the declaration that are "cumulative" of the testimony Mr. Crawford gave at his deposition, and that the remainder of the declaration contains multiple levels of hearsay. (Opp. at 15-16.)

7

1  Mr. Wharton does not dispute that he relies on only paragraphs 58 through 60 of
2  the declaration, and clarifies that the remaining parts of the declaration, not
3  relevant to the issues on remand, "are not being offered" for admission. (*See*
4  Docket No. 929, Reply to Respt.'s Post-Remand Merits Br. ("Reply") at 4; *see also*
5  Opening Br. at 3-4.) Respondent objects to the admission of Mr. Crawford's
6  videotaped interview statements on the basis that they are unsworn and cumulative
7  of his deposition testimony. (Opp. at 12-15.)
8        Whether to exclude or allow cumulative evidence is, of course, within the
9  Court's discretion. *See* Fed. R. Evid. 403. Here, Respondent has attacked Mr.
10 Crawford's credibility on various grounds, arguing that Mr. Crawford is
11 "inherently biased" as Mr. Wharton's "half-brother and self-described protector"
12 (Opp. at 7 (internal quotation marks omitted)); that Mr. Crawford has a prior
13 conviction involving dishonesty (*see id.* at 24); and that Mr. Crawford "suffered an
14 injury that resulted in his hospitalization and temporary amnesia," which may have
15 caused him to "not remember receiving a phone call from Stewart nearly *twenty*
16 *years* earlier" (*id.* at 8 (emphasis in original)).
17       Mr. Crawford's 1993 videotaped interview statements and 1999 declaration,
18 given closer in time to Mr. Stewart's 1986 investigation, rehabilitate the reliability
19 of Mr. Crawford's deposition testimony that no one contacted him at that time.
20 The Court considers the interview statements and declaration for that purpose.
21       **B.    Merits Analysis**
22       Mr. Crawford, in his 1993 interview, 1999 declaration, and 2002 deposition,
23 consistently stated that no one contacted him at the time of Mr. Wharton's trial.
24 (Opening Br. Ex. 402 ¶ 58; *id.* Ex. 403A at 1-2; Crawford Dep. 1/22/02 11:24-
25 11:28AM.) He testified in his deposition that he had "no one contact [him] about
26 [his] brother at all." (Crawford Dep. 1/22/02 11:26-11:27AM; *see also id.* at
27 11:27-11:28AM.) He said that he did not remember ever being contacted by Mr.
28 Stewart or anyone else working on Mr. Wharton's case in 1986, and that if

8

1  someone from California had come to meet with him to talk about his brother, he
2  would "definitely" remember it. (*Id.* at 11:24-11:25AM.) Mr. Crawford testified
3  in his deposition that if someone had come to meet with him and ask him questions
4  about Mr. Wharton's childhood, he would have told that person the same
5  information he gave in his deposition. (Crawford Dep. 1/22/02 11:25-11:26AM,
6  11:27-11:28AM.)
7      Mr. Stewart had no memory of speaking with Mr. Crawford until three
8  months before the evidentiary hearing, almost 20 years after the trial. (8/25/06
9  Evid. Hr'g Tr. 136.) At that point, he "all of a sudden . . . remembered more about
10 this" when he "woke up in the morning hours" one day. (*Id.* at 137.) He "didn't
11 know if it was a dream" at first. (*Id.*) He decided it was not when Respondent's
12 counsel verified certain facts he thought he recalled. (*Id.*) Those facts, it turns out,
13 are not correct. Mr. Stewart relied upon his recollection that Mr. Crawford was
14 "much older" than Mr. Wharton, that "they did not grow up together," and that
15 when Mr. Crawford's biological father left Ms. Wharton, Mr. Crawford "left the
16 house . . . with his real father." (*Id.* at 137-38, 141; *see also id.* at 30 ("He made it
17 very clear he had no information about George's early life because George was
18 much younger and that Gerald moved out of the house and had little or no contact
19 with his half brother.").) In actuality, there was a relatively small age difference of
20 four years between Mr. Crawford and Mr. Wharton. (Crawford Dep. 1/22/02
21 9:28AM.) Mr. Crawford grew up with Mr. Wharton from the time Mr. Wharton
22 was born until Mr. Wharton was approximately 11 years old. (*Id.* at 9:29AM,
23 9:49-9:50AM (testimony that Mr. Crawford was about 15 years old when the
24 family house, where he and Mr. Wharton lived with their mother, got running
25 water).) When Mr. Crawford's mother separated from his step-father,
26 //
27 Mr. Crawford continued to live with his mother (and Mr. Wharton). (*Id.* at 9:42-
28 9:44AM.) He did not go to live with his biological father or step-father.

1    Mr. Stewart claimed that he did not prepare a memorandum or report about his conversation with Mr. Crawford because Mr. Crawford said he could not help. (8/25/06 Evid. Hr'g Tr. 36-39.) That explanation is not consistent with Mr. Stewart's practice of making a report even when a witness was not helpful. (*See id.* at 142 ("Q. You have done lots of reports of people who, in this case, of people who weren't helpful. You have done reports about those people; right? A. Yes."), 143 ("[A]ccording to this report," one witness "told [Mr. Stewart] he didn't have anything helpful, didn't want to talk to [him]"); *see also* Evid. Hr'g Ex. 317 (report by Mr. Stewart reflecting that the witness "had no recollection" of the topic and briefly recording related facts).) That inconsistency is particularly significant since Mr. Stewart believed Mr. Crawford to be an important witness. (8/25/06 Evid. Hr'g Tr. 137.) In addition, even though Mr. Stewart declared that it was his "custom and practice to record all of my case-related activities in billing records," and that he "believe[d] that the billing records accurately reflect[ed] all of the time" he worked on the case, he observed that his "billing records do not specify when such a phone call [with Mr. Crawford] might have taken place." (Opening Br. Ex. 400 ¶¶ 5, 8.) In the "clear factual dispute" between Mr. Stewart's and Mr. Crawford's testimony, *see Wharton*, 765 F.3d at 979-80, Mr. Crawford's testimony that Mr. Stewart did not contact him is the more credible.

Mr. Stewart's notes, which provide somewhat better evidence than his testimony that he contacted Mr. Crawford, are far from clear. (See Evid. Hr'g Ex. 147.) In general, the notes are fragmented and out of order; notes dated 12/3/86 (*id.* at 147-9) appear after those dated 12/5/86 (*id.* at 147-4). Several pages have no apparent indication of the source of the information. (*See, e.g.*, *id.* at 147-1, 147-3, 147-5.) The notes reflect that Mr. Stewart would, as one would expect, jot it down if an interviewee mentioned someone else who might have information and what that person might know. (*See, e.g.*, *id.* at 147-9 (apparently recording information from Claudia Wharton about letters her sister Linda had, and about

10

1  Robert Short's janitorial business, where Mr. Wharton once worked).) Mr. Stewart
2  would also note the ages and addresses of potential interviewees when others
3  provided them. (*See, e.g.*, *id.* at 147-1, 147-10.) Mr. Stewart testified, specifically,
4  that Mr. Wharton's mother provided him with Mr. Crawford's address. (8/25/06
5  Evid. Hr'g Tr. 29.) Thus, the notes appearing under "Gerald W" (Evid. Hr'g Ex.
6  147-6) do not provide reliable evidence that Mr. Crawford gave the information
7  recorded there, notwithstanding their inclusion of his date of birth and address.

        Even assuming, *arguendo*, that the notes do reflect an initial contact between Mr. Stewart and Mr. Crawford, there is no suggestion anywhere that Mr. Stewart conducted an adequate interview of Mr. Crawford. Even if Mr. Crawford failed to recall a brief contact – which, again, seems unlikely – he is still credible that he would have remembered an interview into more sensitive topics.

        Mr. Crawford also provided credible testimony that he would have been ready, willing, and able to provide useful information at trial. Respondent launches a series of attacks on Mr. Crawford's ability and willingness to testify:

> Crawford was suffering from a heart condition that prevented his safe travel. Crawford had an enlarged heart for about five years around the mid-1980's. . . . Crawford's doctor instructed him not to drive, not to engage to in any strenuous activity, and importantly, not to travel. While Crawford claimed [in his deposition] he would have disregarded his doctor's instructions not to travel, . . . Crawford's *willingness* to travel to California to testify is not the same as his *ability* to do so. . . .
>
> Stewart testified that he learned from Duval or some other source, after he returned from Louisiana, that there was a warrant for Crawford's arrest in California. . . .
>
> [And] it is more likely than not that Crawford would not have risked his own life to travel to California given that (1) Crawford was essentially estranged from Petitioner; and (2) Crawford was the sole provider for his wife and their combined eight children. Additionally, there is no evidence that Crawford's employer would have permitted him to take time off from work. The conclusion that Crawford would

11

>not have testified is further supported by the fact that he did not testify
>in person before this Court, after Petitioner had been sentenced to
>death, even though he vowed to do so. It is even less likely that he
>would have done so at the time of trial, when a life sentence for
>Petitioner was still possible, particularly given his belief that
>Petitioner's other family members possessed the same information
>about Petitioner's childhood.

(Opp. at 43-45 (internal citations and footnote omitted, emphasis in original).)

First, as to Mr. Crawford's heart condition, Respondent's argument is misplaced. California Penal Code § 1336 provided, at the time of Mr. Wharton's trial, that when a material witness was "so sick or infirm as to afford reasonable grounds for apprehension that he or she will be unable to attend the trial, . . . the defendant . . . may apply for an order that the witness be examined conditionally." Cal. Penal Code § 1336 (1985). If Mr. Crawford's heart condition were severe enough to prevent his travel to Mr. Wharton's trial, Mr. Wharton's counsel could have taken and admitted his testimony by deposition. *See* Cal. Penal Code §§ 1335-1345 (providing procedure for reading into evidence deposition testimony of such a witness).

Second, as to the alleged warrant in California for Mr. Crawford's arrest, the sole evidence of such a warrant is Mr. Stewart's evidentiary hearing testimony:

>Q. . . . [D]o you have any recollection at all of speaking to Mr. Crawford about his availability to travel to California?
>
>A. I do not personally, but I know there was information that somehow came up later that I think I believe I heard from Mr. Duval. I don't know the source, but there was some talk that Mr. Crawford had a warrant for his arrest in California. And I learned this after I returned from Louisiana. That information was checked out somehow.

(Evid. Hr'g Tr. 34.) As Petitioner argues, "Crawford was asked about the 'warrant' at his deposition, and denied there was a warrant for his arrest in California and making any statement to that effect. . . . If the 'warrant' rumor had

12

1 any substance, Respondent had – and has – the power to prove that it existed."
2 (Reply at 35 (internal citation omitted).) There is, however, no documentary
3 evidence in the record of such a warrant.

4 Third, as to the argument that Mr. Crawford "did not testify in person before
5 this Court" (Opp. at 45), there is no evidence in the record that Mr. Crawford's
6 presence was requested or required. The admission of his video deposition
7 testimony at the evidentiary hearing, without objection from Respondent, does not
8 show that Mr. Crawford would have been unwilling or unable to testify at Mr.
9 Wharton's trial. To the contrary, Mr. Wharton has consistently and adamantly
10 maintained that he would have made himself available to testify at trial. (*See, e.g.*,
11 Opening Br. Ex. 402 ¶ 60 ("I would have been more than willing to drop
12 everything in my life and go out to California to testify in Court . . . . I love my
13 little brother and I would have walked all the way out there if that's what it would
14 take to save his life.").)

15 The Court finds that Mr. Stewart did not contact Mr. Crawford. He did not
16 make sufficient efforts to learn what Mr. Crawford could tell him about Mr.
17 Wharton's background. Mr. Crawford did not deny having useful information.
18 Mr. Crawford would have been available to testify.

19 Thus, in keeping with its direction from the Court of Appeals, *Wharton*, 765
20 F.3d at 981, the Court determines that Mr. Wharton has established deficient
21 performance in the investigation of his penalty phase presentation, and GRANTS
22 Mr. Wharton's petition for writ of habeas corpus as to his capital sentence.
23 //

24 **II. Unconstitutionality of California's Death Penalty System**
25     **A. Mr. Wharton's Claim**
26 By the Court's order on January 27, 2015, Mr. Wharton amended his
27 Petition to plead Claim 48. Claim 48 asserts that systemic delay in California's
28 post-conviction review process divorces the capital sentence from any legitimate

penological purpose; that the unlikelihood that he, or any particular Death Row inmate, will in fact be executed renders those executions impermissibly arbitrary; and that the years of awaiting an execution that may or may not occur constitute cruel and unusual punishment. (Docket No. 891-1 at 1.) Mr. Wharton's claim followed this Court's decision in *Jones v. Chappell*, 31 F. Supp. 3d 1050 (C.D. Cal. 2014).

The Court of Appeals reversed that decision on November 12, 2015. *Jones v. Davis*, No. 14-56373, ___ F.3d ___, 2015 WL 6994287 (9th Cir. 2015). Should petitioner Jones seek rehearing en banc, and should the Court of Appeals recognize merit in his claim in such a hearing, Mr. Wharton may yet be entitled to relief. For now, however, "[t]hey who must be obeyed have spoken, and this Court's duty is to faithfully fulfill their mandate." *S.E.C. v. Citigroup Global Markets, Inc.*, 34 F. Supp. 3d 379, 379, 380-81 (S.D.N.Y. 2014) (Rakoff, J.) ("[I]t would be a dereliction of duty for this Court to seek to evade the dictates of the Court of Appeals. That Court has now fixed the menu, leaving this Court with nothing but sour grapes."). Accordingly, Claim 48 is DENIED.

### III. Order

Claim 48 is **DENIED**. Pursuant to 28 U.S.C. § 2253(c)(2), the Court issues a Certificate of Appealability as to Claim 48.

The Second Amended Petition is **GRANTED** on the basis of penalty phase ineffective assistance of counsel in the investigation of witness Gerald Crawford. (*See supra* n.1.) The sentence of death in the matter of *People v. George Wharton*, //

No. 161315 of the California Superior Court of Santa Barbara County, shall be **VACATED.**

**IT IS SO ORDERED.**

Dated: November 24, 2015.

CORMAC J. CARNEY
United States District Judge

15